## Nahrgang v. Nahrgang

*Abraham Wernick*, for plaintiff.

*Samuel Halbert*, for defendant.

FLOOD, J., May 8, 1953.—On September 26, 1952, plaintiff filed a complaint in equity against her husband. On October 7, 1952, there was filed an affidavit

of service of a properly endorsed copy of the complaint on defendant at 11 a. m., on September 30, 1952, at his place of employment. No appearance was entered for defendant and on October 21, 1952, judgment for failure to file an answer was taken against defendant. On October 24, 1952, defendant filed a petition to strike off service and the judgment, averring that he had not been served on September 30th, but that he found a copy of the complaint on October 4th on his desk at the place of his employment and that his counsel planned to file an answer on October 23rd. In answer to the petition, plaintiff averred that the complaint was served as stated in the affidavit of service.

Depositions were taken in support of the petition. Defendant testified that he was present at his place of employment at 11 a. m., on September 30th and that he was not served at that time nor informed that anyone was attempting to contact him; that he never saw the individual who executed the affidavit of service; that he found a copy of the complaint on his desk when he arrived for work on the morning of October 4th; that he contacted his lawyer that morning; that the first time he inquired how the envelope reached his desk was three weeks later.

The watchman of the building in which defendant is employed testified that on October 3rd, between 3:45 and 5 p. m., he received the envelope in which defendant found the copy of the complaint from a man he did not know; that this man asked if the witness would see that it was given to defendant; that the witness left the envelope on defendant's desk; that he recalled the envelope from the name and address in the upper left corner; that he told these facts to defendant when the latter inquired about it three weeks later; that he did not recall seeing the individual who made the affidavit of service.

The person who made the affidavit testified that he attempted to make service at defendant's place of employment on September 27th and having failed to do so returned there on September 30th, at about 11 a.m .; that he was taken to the basement by the elevator operator where he gave the envelope containing the papers to a man who answered "yes" to his question "Mr. Nahrgang"; that he signed the affidavit of service on October 2nd. He was unable to identify defendant as the man to whom he gave the envelope and said he thought it was a different person. The secretary in the office of plaintiff's lawyer testified that she typed the affidavit of service on October 2nd.

1. The result of the depositions is that defendant denies the service and, since the maker of the affidavit cannot identify him as the one who was served, that testimony is substantially uncontradicted. An affidavit of service by an individual does not have the conclusiveness that attaches to a sheriff's return and may be controverted. See Coleman Dining Car Co. v. Walsh et al., 48 D. & C. 283 (1943). See 72 C. J. S., 1146 §103. In the absence of the presumption of validity of the service, it is important to determine upon whom the burden of proof falls where an issue of fact as to such service is drawn. We have found no case which discusses this point. It would seem that the mere filing of the affidavit is sufficient under Pa. R. C. P. 1504 for the commencement of the action and regular proceedings thereunder, until controverted, but a sworn denial of service, as here, should put plaintiff to proof of the service. But no matter who has the burden here we would reach the conclusion under the depositions that the service was not made as averred in the affidavit.

2. This service cannot be sustained on the theory that it was made at defendant's office or place of business within the meaning of Pa. R. C. P. 1009 (*b*) (2)

(ii) ; cf. Pa. R. C. P. 1504(*a*). We do not think it can be said that the envelope was handed to "the person for the time being in charge", when it was handed to a watchman in the daytime, without further evidence as to the watchman's duties.

But in any event, we do not consider defendant as within the class of individuals covered by the rule. Prior practice limited service at a place of business to cases where defendant had a proprietary interest in the business. Somewhat broader language in rule 1009(*b*)(2)(iii) increases the opportunities for such service: Goodrich-Amram Civil Practice §1009(*b*) (2)(iii). But while we agree that an executive officer or director of a corporation may be served at the office of the corporation under the rule, (Wylie v. McKnight,10 Beaver145 (1948)), we do not think that an ordinary employe not in a managerial capacity can be said to have his "office" or "usual place of business" at his place of employment. To give such range to the rule would mean that any individual employed in a great industrial plant could be served there. Such a result would far exceed the language and the intent of the rule. Here apparently defendant was a maintenance engineer of the building where the copy of the complaint was left. Accordingly we do not think he was properly served.

The petition asks that the judgment be stricken off. Plaintiff argues that we cannot take such action since there is no irregularity apparent on the face of the record and that we cannot open the judgment since no defense is set forth in the petition. But our action in striking the service removes a necessary support from the judgment inasmuch as there is no jurisdiction over defendant. After the service is held invalid, the judgment is obviously void on the face of the record and must be stricken. See Security Trust Company of

Pottstown v. Feist et al., 24 D. & C. 234, 240 (1935). In such a context plaintiff's arguments have no weight.

Rule absolute.